UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE PEREZ, <br><br> Petitioner, <br><br> v. <br><br> F. FOULK, <br><br> Respondent. | No. 1:13-cv-00476-SKO  HC <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  He contends that his Fourteenth Amendment right to due process was violated by (1) erroneous and prejudicial jury instructions on conspiracy and the natural and probable consequences doctrine, and (2) an arson conviction that was not supported by substantial evidence.  Respondent counters that the state court's determinations that (1) the instructional errors constituted harmless error and (2) sufficient evidence supported the arson conviction, were neither contrary to nor an unreasonable application of United States Supreme Court precedent.

I.     **Factual Background**

In Delano, California, in the early morning hours of July 18, 2008, Petitioner drove a stolen city pick-up truck; co-defendant Juan Efren Prado rode in the passenger seat.  They

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1

stopped at the Rodriguez residence, where brothers Carlos and Alejandro Rodriguez were standing near the street corner with Salvador Gandarilla and Luis Celaya.

Prado got out of the truck and asked the four men whether they were Sureño gang members. Celaya and the Rodriguez brothers denied gang membership, but Gandarilla, who had ties to the Sureños, asked, "What are you gonna do if we are Sureños?" In response, Prado reached into the cab of the truck, pulled out a long-barreled firearm, and shot at the men. Gandarilla was killed, and Carlos Rodriguez and Celaya were seriously injured.

Petitioner and Prado drove off, and abandoned the truck after setting fire to papers in the cab. The fire burned out quickly, and the truck sustained minor damage.

## II.     Procedural Background

Petitioner was charged with the following counts: (1) first degree murder of Salvador Gandarilla (Cal. Penal Code § 187(A)) with multiple enhancements (Cal. Penal Code §§ 190.2(A)(22) and 186.22(B)(1)); Cal. Welfare and Inst. Code § 707(D)(1));  (2) attempted murder of Carlos Rodriguez (Cal. Penal Code § 664/187(A)) with multiple enhancements (Cal. Penal Code §§ 187A, 186.22(B)(1), and 189; Cal. Welfare and Inst. Code § 707(D)(1)); (3) attempted murder of Luis Celaya (Cal. Penal Code § 664/187(A)) with multiple enhancements (Cal. Penal Code §§ 187A, 186.22(B)(1), and 189; Cal. Welfare and Inst. Code § 707(D)(1)); (4) attempted murder of Alejandro Rodriguez (Cal. Penal Code § 664/187(A)) with multiple enhancements (Cal. Penal Code §§ 187A, 186.22(B)(1), and 189; Cal. Welfare and Inst. Code § 707(D)(1)); (5) assault of Carlos Rodriguez with a firearm (Cal. Penal Code §245(A)(2)) with multiple enhancements (Cal. Penal Code §186.22(B)(1); Cal. Welfare and Inst. Code § 707(D)(1)); (6) assault of Luis Celaya with a firearm (Cal. Penal Code §245(A)(2)) with multiple enhancements (Cal. Penal Code §186.22(B)(1); Cal. Welfare and Inst. Code

///

§ 707(D)(1)); (7) assault of Alejandro Rodriguez with a firearm (Cal. Penal Code §245(A)(2)) with multiple enhancements (Cal. Penal Code §186.22(B)(1); Cal. Welfare and Inst. Code § 707(D)(1)); (8) taking a motor vehicle without the owner's consent (Cal. Vehicle Code § 10851(A)) with multiple enhancements (Cal. Penal Code §186.22(B)(1); Cal. Welfare and Inst. Code § 707(D)(1)); (9) arson (Cal. Penal Code § 451(D)) with multiple enhancements (Cal. Penal Code §186.22(B)(1); Cal. Welfare and Inst. Code § 707(D)(1)); (10) participation in a criminal street gang (Cal. Penal Code § 186.22(A)) with one enhancement (Cal. Welfare and Inst. Code § 707(D)(1)).[2]

Petitioner and Prado were tried together before a jury in Kern County Superior Court in April and May 2010. On May 17, 2010, the jury returned a verdict finding Petitioner guilty on all counts and all enhancements to be true. On July 27, 2010, the Superior Court sentenced Petitioner to an aggregate term of life in prison without the possibility of parole plus 90 years to life, with a determinate sentence of 8 years and 8 months imprisonment.

On August 13, 2010, Petitioner filed a direct appeal to the California Court of Appeals, Fifth Appellate District. Petitioner raised multiple issues, including the sentencing and sufficiency-of-the evidence issue now raised in his federal petition. In a March 7, 2012, decision, the appellate court corrected certain sentencing errors in the abstract of judgment, but denied all other issues. The court denied a petition for rehearing on April 6, 2012. On June 13, 2012, the California Supreme Court denied the petition for review.

Petitioner filed a petition in this Court on March 4, 2013.

### III.  Standard of Review of Federal Habeas Petitions

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United

---

[2] Count 10 alleged possession of a controlled substance for purposes of sale against Prado only.

States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable

///

4

application of, clearly established Federal law." *Id.* at 72.  The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  The federal court must apply the presumption that state courts know and follow the law.  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent.  *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Lockyer*, 538 U.S. at 75-76.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable.  *Harrington*, 562 U.S. at 102.

**IV.**     **Jury Instruction Error: Natural and Probable Consequences**

In his first claim, Petitioner contends that the conspiracy instruction on the natural and probable consequences doctrine prejudiced the jury's determination of Petitioner's guilt in violation of his 14th Amendment right to a fair trial.  In his second claim, Petitioner adds that the error in the jury instructions erroneously instructed the jury that it could convict him of first degree murder if the shooter had the requisite deliberation and premeditation.  Following a careful review of the record as a whole and the complete jury instructions, the Court agrees with the California Court of Appeals that the trial court's error in presenting the jury instruction on

///

natural and probable consequences (CALCRIM 417) was harmless error and did violate any federal constitutional right.

### A. State Law on Natural and Probable Consequences

> Under California Law, a person who aids and abets a confederate in the commission of a criminal act is liable not only for that crime (the target crime), but also for any other offense (nontarget crime) committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted. To convict a defendant of a nontarget crime as an accomplice under the "natural and probable consequences" doctrine, the jury must find that, with knowledge of the perpetrator's unlawful purpose, and with the intent of committing, encouraging, or facilitating the commission of the target crime, the defendant aided, promoted, encouraged, or instigated the commission of the target crime. The jury must also find that the defendant's confederate committed an offense other than the target crime, and that the nontarget offense perpetrated by the confederate was a "natural and probable consequence" of the target crime that the defendant assisted or encouraged.

*People v. Prettyman*, 14 Cal.4th 248, 254 (1996).

If a defendant aids the commission of a target crime, but does not intend the commission of a greater offense by the perpetrator, and if the ultimate offense is not the "natural and probable consequence" of the target crime, the defendant cannot be convicted of the perpetrator's ultimate offense. *People v. Hammond*, 181 Cal.App.3d 463, 468-69 (1986).

> [W]hen the prosecutor relies on the "natural and probable consequences" doctrine, the trial court must identify and describe the target crimes that the defendant might have assisted or encouraged. An instruction *identifying* target crimes will assist the jury in determining whether the crime charged was a natural and probable consequence of some other criminal act. And an instruction *describing* the target crimes will eliminate the risk that the jury will indulge in uninformed speculation with regard to what types of conduct are criminal.

*Prettyman*, 14 Cal.4th at 254.

The California Supreme Court has not required that the jury instructions identify target and nontarget crimes when the instructions as a whole encompass all elements of the natural and probable consequences doctrine. *See id.* at 271-72. The natural and probable consequences

///

6

doctrine requires the jury to decide "whether the defendant (1) with knowledge of the confederate's unlawful purpose; and (2) the intent of committing, encouraging, or facilitating the commission of any target crime(s); (3) aided, promoted, encouraged, or instigated the commission of the target crimes. *Id.* at 271. "The jury must also determine whether (4) the defendant's confederate committed an offense other than the target crime(s); and whether (5) the offense committed by the confederate was a natural and probable consequence of the target crime(s) that the defendant encouraged or facilitated." *Id.*

### B. The Jury Instructions on Vicarious Liability

The jury instructions on natural and probable consequences were a small part of the trial court's instructions on direct and vicarious liability, including liability as an aider and abettor or as a member of a conspiracy:

> A person may be guilty of a crime in two ways: One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator who directly committed the crime.
>
> A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it. Under some circumstances if the evidence establishes aiding and abetting of one crime, the person may also be found guilty of other crimes that have occurred during the commission of the first crime.
>
> To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:
>
> One, the perpetrator committed the crime;
>
> Two, the defendant knew that the perpetrator intended to commit the crime;
>
> Three, before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;
>
> And, fourth, the defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime.
>
> Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to and does, in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of the crime. If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as the aider and abettor.

If you conclude that the defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of the crime does not by itself make him or her an aider or abettor.

A person who aids and abets a crime is not guilty of that crime if he or she withdraws before the crime is committed. To withdraw a person must do two things:

One, he or she must notify everyone else he or she knows is involved in the commission of the crime that he or she is no longer participating. That notification must be made early enough to prevent the commission of the crime.

And, two, he or she must do everything reasonably necessary and reasonably within—I'm going to read that over again.

Number two, he or she must do everything reasonably within his or her power to prevent the crime from being committed. He or she does not have to actually prevent the crime.

The People have the burden of proving beyond a reasonable doubt that the defendant did not withdraw. If the People have not met this burden, you may not find the defendant guilty under an aiding and abetting theory.

The People have presented evidence of a conspiracy. A member of a conspiracy is criminally responsible for the acts or statements of any other members of the conspiracy done to help [accomplish] the goal of the conspiracy.

To prove that a defendant was a member of the conspiracy in this case the People must prove that:

One, the defendant intended to agree and did agree with the other defendants or one or more unknown conspirators to commit murder, assault with a firearm, theft of a motor vehicle, and/or arson;

Two, at the time of the agreement the defendant and one or more of the other members of the conspiracy intended that one or more of them would commit murder, assault with a firearm, theft of a motor vehicle, and/or arson;

Three, one of the defendants or another unknown conspirator or either or any of them committed at least one of the following overt acts to accomplish murder, assault with a firearm, theft of a motor vehicle, and/or arson;

I'm going to read that over again.

Three, one of the defendants or another unknown conspirator or either or any of them committed at least one of the following overt

acts to accomplish murder, assault with a firearm, theft of a motor vehicle, and/or arson;

One, a member of the conspiracy punched out the door lock of a City of Delano pickup truck;

Two, a member of the conspiracy removed the housing covering the steering column of the City of Delano pickup truck;

Three, a member of the conspiracy obtained the use of a small black, silver, or gray vehicle;

Four, Juan Prado obtained a 7.62 x 39 millimeter ammunition;

Fifth, Juan Prado obtained a rifle capable of firing a 7.62 x 39 millimeter ammunition;

Sixth, Juan Perez [sic] took control of the City of Delano pickup truck;

Seven, Juan Prado entered the City of Delano pickup truck;

Eight, Jesse Perez drove the pickup truck from an unknown location to the intersection of 17th Avenue and Jefferson Street in the City of Delano;

Ninth, Juan Prado fired the rifle;

Tenth, Jesse Perez drove Juan Prado from the intersection of 17th and Jefferson Street to an unknown location;

And, 11, a member of the conspiracy set a fire in the interior of the City of Delano pickup truck;

And fourth, at least one of these overt acts was committed in California.

To decide whether a defendant committed these overt acts, kindly consider all the evidence presented about the acts.

To decide whether a defendant and one or more of the other alleged members of the conspiracy intended to murder, assault with a firearm, theft of a motor vehicle, and/or arson, please refer to the separate instructions that I will give you on those crimes.

The People must prove that the members of the alleged conspiracy had an agreement and intent to commit murder, assault with a firearm, theft of a motor vehicle, and/or arson.

The People do not have to prove that any members of the alleged conspiracy actually met or came to a detailed or formal agreement to commit one or more of these crimes. An agreement may be inferred from conduct if you conclude that the members of the alleged conspiracy acted with a common purpose to commit the crime.

An overt act is an act done by one or more members of the conspiracy that is done to help accomplish the agreed-upon crime. The overt act must happen after the defendant has agreed to commit the crime. The overt act must be more than the act or agreeing or planning to commit the crime, but it does not have to be a criminal act itself.

You must all agree that at least one overt act was committed in California by at least one alleged member of the conspiracy, by you do not have to all agree on which overt act or acts were committed or who committed the overt act or acts. You must decide as to each defendant whether he or she was a member of the alleged conspiracy.

The People contend that the defendants conspired to commit one of the following crimes: Murder, assault with a firearm, theft of a motor vehicle, and/or arson.

You may not find the defendant guilty under a conspiracy theory unless all of you have agreed that the People have proved that the defendant conspired to commit at least one of these crimes and you all agree which crime he conspired to commit. You must also agree on the degree of the crime. Again, you must all agree on the degree, d-e-g-r-e-e, of the crime.

A member of a conspiracy does not have to personally know the identity or roles of all the other members. Someone who merely accompanies or associates with members of a conspiracy, but who does not intend to commit the crime, is not a member of the conspiracy.

Evidence that a person did an act or made a statement that helped accomplish the goal of the conspiracy is not enough by itself to prove that the person was a member of the conspiracy.

A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy. The rule applies even if the act was not intended as part of the original plan. Under this rule a defendant who is a member of the conspiracy does not need to be present at the time of the act.

A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.

In deciding whether a consequence is natural and probable, kindly consider all of the circumstances established by the evidence.

A member of a conspiracy is not criminally responsible for the act of another member if that act does not further the common plan or is not a natural and probable consequence of the common plan.

///

To prove that the defendant is guilty of the crimes charged in Counts 1 through 9, the People must prove that:

One, the defendant conspired to commit one of the following crimes: Murder, assault with a firearm, theft of a motor vehicle, and/or arson;

Two, a member of the conspiracy committed attempted murder to further a conspiracy;

And, three, attempted murder was a natural and probable consequence of the common plan or design of the crime that the defendant conspired to commit.

The defendant is not responsible for the acts of another person who was not a member of the conspiracy even if the acts of the other person helped accomplish the goal of the conspiracy.

A conspiracy member is not responsible for the acts of another—of other conspiracy members that are done after the goal of the conspiracy has been accomplished.

In deciding whether the People have proved that the defendant, Jesse Perez, committed any of the crimes charged, you may not consider any statement made out of court by Juan Prado unless the People have proved by a preponderance of the evidence that:

One, some evidence other than the statement itself establishes that a conspiracy to commit a crime existed when the statement was made;

Two, Jesse Perez was a member of and participating in the conspiracy when Juan Prado made the statement;

Third, Juan Prado made the statement in order to further the goal of the conspiracy;

And, fourth, the statement was made before or during the time that defendants Juan Prado and Jesse Perez were participating in a conspiracy.

A statement means an oral or written expression of nonverbal conduct intended to be a substitute for an oral or written expression.

Proof by a preponderance of evidence is a different standard of proof that proof beyond a reasonable doubt. A fact is proved by a preponderance of evidence if you conclude that it is more likely than not that the fact is true.

You may not consider statements made by a person who was not a member of a conspiracy—or of the conspiracy even if the statements help accomplish the goal of the conspiracy. You may not consider statements made after the goal of the conspiracy has been accomplished.

11

> A defendant is not responsible for any acts that were done before he joined the conspiracy. You may consider evidence of acts or statements made before the defendant joined the conspiracy only to show the nature and goals of the conspiracy. You may not consider any such evidence to prove that the defendant is guilty of any crimes committed before he joined the conspiracy.
>
> The defendant is not guilty of conspiracy to commit murder, assault with a firearm, theft of a motor vehicle, and/or arson if he withdrew from the alleged conspiracy before any overt act was committed.
>
> To withdraw from a conspiracy the defendant must truly and affirmatively reject the conspiracy and communicate that rejection by word or by deed to the other members of the conspiracy known to the defendant. A failure to act is not sufficient alone to withdraw from a conspiracy.
>
> Now, if you decide that the defendant withdrew from a conspiracy after an overt act was committed, the defendant is not guilty of any acts committed by remaining members of the conspiracy after he withdrew.

Reporter's Transcript, vol. XVII, at 2885-2894 (Lodged Doc. 10).

The judge later instructed the jury of the elements of each of the charged offenses, lesser-included offenses, and enhancements.

### C. **The Error in the Natural and Probable Consequences Instruction**

At the time of Petitioner's trial, the standard form of CALCRIM 417 read as follows:

> To prove that the defendant is guilty of the crime[s] charged in Count[s] ____, the People must prove:
>
> 1. The defendant conspired to commit one of the following crimes:_____ <insert target crime[s]>;
>
> 2. A member of the conspiracy committed _____ <insert nontarget offense[s]> to further the conspiracy;
>
> AND
>
> 3. ____ <insert nontarget offense[s]> (was/were) [a] natural and probable consequence[s] of the common plan or design of the crime that defendant conspired to commit. (CALCRIM No. 417 (Summer 2011 ed. [new Jan. 2006]), p. 209.)

*Prado* at *14.

Because the jury needed to determine whether the attempted murders of Carlos Rodriguez (count 2), Luis Celaya (count 3), and Alejandro Rodriguez (count 4) were the natural and probable consequences of the target offenses (counts 1 and 5-9), the instruction should have

12

begun: "To prove that the defendant is guilty of the crimes charged in Counts 2, 3, and 4 . . . ," not "Counts 1 through 9." The balance of the instruction was presented correctly.

### D. Court of Appeals Decision[3]

The Court of Appeals concluded that the trial court's presentation of CALCRIM No. 417 incorrectly expressed the law but was not prejudicial in light of the jury's verdict that Petitioner acted with intent to kill. In reaching its decision, the state court acknowledged that the trial court first instructed the jury regarding evidence of an uncharged conspiracy, using CALCRIM No. 416. No. 416 "defined the elements of a conspiracy, set forth various overt acts, and repeatedly posited that [Petitioner] conspired 'to commit murder, assault with a firearm, theft of a motor vehicle and/or arson.'" *People v. Prado*, No. F060754 at *12-*13 (Cal.App. Mar. 7, 2012) (Lodged Doc. 4).

The appellate court interpreted the actual instruction to have "informed the jury that [Petitioner] could be found guilty of counts 1 through 9 if attempted murder was a natural and probable consequence of the common plan. But the law requires that to be guilty of all the counts under this theory, each offense must be a natural and probable consequence of the conspiracy. The challenged instruction was therefore not correct in law." *Prado* at *15. Nonetheless, under California law, an appellate court cannot reverse a conviction for an instructional error unless "'an examination of the *entire cause, including the evidence*,' indicates that the error resulted in a 'miscarriage of justice.'" *Prado* at 15 (quoting *People v. Breverman*, 19 Cal.4th 142, 178 (1998)).

The appellate court found the instructional error to have been harmless since the evidence as a whole overwhelmingly supported the conclusion that Petition was culpable as an aider and abettor and as a co-conspirator. Petitioner drove Prado in the stolen truck until they found and confronted four individuals concerning their gang membership. Petitioner remained at the wheel while Prado got out of the vehicle, shot at the four individuals, wounded two of them, killed one

///

---

[3] Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision, which is, in this case, the opinion of the California Court of Appeal, Fifth Appellate District. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).

of them, and got back into the truck. Petitioner then drove away. In the state court's opinion, Petitioner's intimate involvement in the crime as a whole reasonably supported the jury's conclusion that Petitioner knew that the assaults, attempted murders, and murder were likely to occur. The court rejected Petitioner's argument that, under the facts of this case, he could have been found guilty of a lesser degree of homicide that Prado.

### E.  Standard of Review of Jury Instruction Errors

Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review. "It is not the province of a federal court to reexamine state court determinations of state law questions." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). "The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006).

To prevail in a collateral attack on state court jury instructions, a petitioner must do more that prove that the instruction was erroneous. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Instead, the petitioner must prove that the improper instruction "by itself so infected the entire trial that the resulting conviction violated due process." *Estelle*, 502 U.S. at 72. Even if there were constitutional error, habeas relief cannot be granted absent a "substantial and injurious effect" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

A federal court's review of a claim of instructional error is highly deferential. *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir. 1993). A reviewing court may not judge the instruction in isolation, but must consider the context of the entire record and of the instructions as a whole. *Id.* The mere possibility of a different verdict is too speculative to justify a finding of constitutional error. *Henderson*, 431 U.S. at 157.

Even when the trial court has made an instructional error, a habeas petitioner is only entitled to relief if the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A state prisoner is not entitled to federal habeas relief unless the instructional error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637. If the court is convinced that the error did

///

not influence the jury, or had little effect, the judgment should stand. *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995).

### F. No Federal Constitutional Error

The jury instructions in this case were complete and detailed. Except for the introductory paragraph in CALCRIM 417, the instructions as a whole repeatedly and clearly directed the jury that it needed to consider murder, assault with a firearm, theft of a motor vehicle, and arson as the possible target offenses of the conspiracy. Part 1 of CALCRIM 417 accurately identified murder, assault with a firearm, theft of a motor vehicle, and arson (counts 1 and 5-9) as the possible target offenses of the conspiracy. Parts 2 and 3 of CALCRIM 417 accurately identified attempted murder (counts 2-4) as nontarget offenses. Evaluated in context, the Court cannot conclude that the jury was misled by the misstatement at the inception of the instruction of natural and probable consequences.

Evidence presented at trial established Petitioner's participation in the offenses. Petitioner drove the stolen city truck, sharing its cab with Prado and the rifle with which Prado would shoot the victims. In control of the vehicle, Petitioner slowed the truck as he and Prado approached the corner on which Gandarillo, Celaya, and the Hernandez brothers lingered. Assuming that, unlike an ordinary unidentified vehicle, a city truck was not a threat, the gathered men did not scatter as the truck approached and stopped. Petitioner stopped the truck and remained behind the wheel as Prado engaged the victims in conversation concerning their gang affiliation, reached into the cab for the rifle, and fired into the group. Petitioner waited as Prado shot at the four fleeing men and returned to the cab. Petitioner then left the crime scene and drove to an undisclosed location. The truck was found smoldering the next morning.

Having considered the record and the instructions as a whole, the Court cannot conclude that the state court's determination that the jury instructions did not violate Petitioner's constitutional rights was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). The Court is not convinced that the error influenced the jury's verdict. Even if the Court were convinced that the jury could have reached a different verdict, it cannot conclude that the state court's determination was contrary to or an

unreasonable application of clearly established federal law.

## V. Due Process: Insufficient Evidence

In his third claim, Petitioner contends that his conviction for arson should be reversed for insufficiency of the evidence. Respondent disagrees.

### A. State Court Decision

The California Court of Appeals rejected Petitioner's contention that the arson conviction was not supported by sufficient evidence. It applied the standard set forth in *People v. Vy*, 122 Cal.App.4th 1209, 1224 (2004) (internal quotations and citations omitted):

> In determining whether the evidence is sufficient to support a conviction . . ., the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Under this standard, an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Rather, the reviewing court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.

The court rejected Petitioner's argument that circumstantial evidence was insufficient to convict him of the crime of arson. Noting that the surreptitious nature of arson generally dictates that it must be proven with circumstantial evidence, the court declined to require eyewitness testimony or other direct evidence that Petitioner and Prado set the truck on fire:

> At trial, a fire department arson investigator testified that when the pickup truck was found some 12 hours after the shooting, it had staining on the window[s] caused by a slow-building hydrocarbon fire. A paper on a clipboard inside the vehicle had been set on fire, and the fire spread to the truck seat and steering wheel before going out from lack of oxygen in the airtight truck cab. Investigation ruled out that the fire was started by a flare gun. Furthermore, Perez and Prado were the last two people seen in the truck before the arson was discovered, and they certainly had a motive to dispose of it.

*Prado* at *21.[4]

---

[4] Carlos Rodriguez was in possession of an agricultural flare gun at the time of the shooting. He testified that he was unsure whether or not he fired it in the course of the incident. Police testimony established that following testing, investigators tested the flare gun and determined that it had not been fired.

B.     **Sufficiency of Arson Evidence**

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998).  It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the trier of fact could reasonably have reached its verdict. *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991).  Here, despite the absence of eyewitness testimony, the circumstantial evidence could support the conclusion that Petitioner, Prado, or a co-conspirator set fire to papers in the truck's cab.  Because the jury could reasonably have concluded that Petitioner, Prado, or a co-conspirator set the fire, Petitioner's due process rights were not violated by the arson conviction.

## VI.   Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending

removal proceedings.

  (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

    (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

    (B) the final order in a proceeding under section 2255.

  (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

  (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

*///*

*///*

*///*

*///*

*///*

18

**VII.     Conclusion**

The Court hereby DENIES the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Court declines to issue a certificate of appealability.  The Clerk of Court is directed to enter judgment for the Respondent.

IT IS SO ORDERED.

Dated:     **March 21, 2016**                              **/s/ Sheila K. Oberto**
                                                          UNITED STATES MAGISTRATE JUDGE